IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, SONY ERICSSON MOBILE COMMUNICATIONS AB, and SONY ERICSSON MOBILE COMMUNICATIONS (USA) INC., | § § § § § § | CIVIL ACTION NO. 2:06-CV-00063-TJW |
| Plaintiffs/Counter-Defendants and Counter-Plaintiffs | § § § | |
| v. | § § | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA LLP, | § § § § § | JURY TRIAL DEMANDED |
| Defendants/Counter-Plaintiffs and Counter-Defendants. | § § | |

**BRIEF IN SUPPORT OF PLAINTIFFS'
PROPOSED TRIAL AND DISCOVERY SCHEDULE**

Plaintiffs, Ericsson Inc. and Telefonaktiebolaget LM Ericsson ("Ericsson"), Sony Ericsson Mobile Communications AB and Sony Ericsson Mobile Communications (USA) Inc. ("Sony Ericsson") (collectively, "Plaintiffs"), respectfully submit this Brief in Support of Plaintiffs' Proposed Trial and Discovery Schedule, and respectfully show the Court the following:

## I. INTRODUCTION

Both parties have filed breach of contract claims against each other, arguing that each is required to grant compulsory licenses to the other for the standard essential patents that have

been asserted in this case.  Plaintiffs and Samsung agree that they are required to license each other on fair, reasonable, and non discriminatory terms.  The only disagreement is with the financial terms of that cross-license.

Plaintiffs propose an early trial on the breach of contract claims in the case.  Adjudication of these contract claims does not require proof of infringement or validity of the patents in suit— the only issue is the relative value of the parties' portfolios.  Once the fair and reasonable royalty rate is established, that adjudication will almost certainly end the dispute as to infringement of the standard-essential patents because the parties will have no choice but to grant licenses to each other at the adjudicated rate if a license is requested.  If the breach of contract claims are tried first, Plaintiffs believe that there is a strong likelihood that the parties will enter into a cross-license, and no trials on patent infringement will be required.

The trial of the breach of contract claims will be straightforward.  At issue is the amount of a fair and reasonable royalty rate for a standard-essential patent portfolio.  The jury will hear evidence about other licensees entered into by the parties, the weight and quality of the portfolios, and the licensing practices and economics of the industry.  As a result, Plaintiffs feel the case can realistically be ready for trial as early as August 2007.[1]  The parties have already exchanged document discovery and have taken 30(b)(6) and individual depositions on licensing issues in their pending ITC investigations.  Although some follow-on discovery will be needed, it should not be so substantial that the case can not be ready for trial in a few months.

Samsung resists a separate and expedited breach of contract trial, not for reasons of economic case management, but for purely tactical reasons.  Samsung has a much smaller and

---

[1] Ericsson realizes that the Court may not have room on its August docket or the desire to push the contract case to trial so quickly.  Ericsson makes this statement to underscore for the Court that Ericsson wishes a trial at the Court's earliest convenience, and will be ready for trial on the contract claims whenever the Court is able to set the trial.

less valuable cellular patent portfolio than Ericsson. Samsung's preferred tactic is to force Ericsson to infringement trials, in both the ITC and in Marshall, on a subset of the parties patents. Then, at the conclusion of those trials, Samsung will seek an injunction to prevent Plaintiffs from importing or selling products in the United States. Samsung hopes that the pressure of this "nuclear standoff" will force Plaintiffs to take a license from Samsung at a drastically reduced royalty rate. In other words, Samsung hopes to obtain a discount from the fair, reasonable, and non-discriminatory rate that many other cellular companies have voluntarily paid Ericsson by forcing an injunction standoff on a subset of the parties' patents. Because it only takes one patent to obtain an injunction, Samsung hopes to neutralize Ericsson's larger and more valuable portfolio by creating this standoff.

Plaintiffs merely wish a fair and impartial adjudication of what a fair royalty rate should be between them and Samsung. This dispute, and others like it, should be decided by a fair adjudication of the true issue separating the parties—the worth of their patent portfolios. Because this case is simply a financial dispute over royalty rates, it makes complete sense to submit the core financial dispute to a jury before adjudicating infringement, validity, and enforceability of more than forty individual patents.

Plaintiffs also propose a case management plan for the patent infringement case. Pending the outcome of a trial on the portfolio rates, Plaintiffs propose that the parties comply with the local Patent Rules for all active patents in the case through initial disclosures and infringement/invalidity contentions. Plaintiffs propose that, prior to the identification of claim terms for construction, the parties divide the active patents-in-suit equally into three actions, each of which would proceed under the Patent Rules, but staggered four months apart. Trial of the

first patent action would be in June 2008, of the second action in October 2008, and of the third in February 2009.

## II.  EARLY TRIAL ON BREACH OF CONTRACT AND ESTOPPEL CLAIMS

Plaintiffs believe that a trial scheduled for August, 2007, on the schedule detailed in Plaintiff's Supplemental Scheduling Conference Report attached as Exhibit A, will resolve the major issue that divides the parties in the current action.  As discussed at length in Plaintiff's pending Motion for Separate Trial of the Parties' Breach of Contract Claims, the current dispute between Plaintiffs and Samsung involves litigation in two patent actions before this Court, as well as in the United Kingdom, Germany, the Netherlands, and two investigations before the International Trade Commission.  In total, there are over 60 patents asserted in the various tribunals.

The number of patents at issue results from the fact that both parties are attempting to assert and determine the value of their respective wireless patent portfolios.  Plaintiff's Motion for Separate Trial discusses the events leading up to the current impasse—disagreement over the terms of a portfolio cross-license between the parties.  If the amount of fair, reasonable, and non-discriminatory license fee for the relevant portfolios can be established by an early trial on the breach of contract and estoppel claims, then the parties will acquire the information necessary to end the current impasse.

### A.  Applicable Legal Standards For Separate Trials.

The Court has broad discretion to order a separate trial of any claim, cross-claim, counterclaim or separate issue in furtherance of convenience, to avoid prejudice, or when

separate trials will be conducive to expedition and economy.[2]  Separate trials are proper where the issues are clearly separable and can be tried separately without confusing the jury.[3]  Separate trials are also justified where the controversy involves more than one cause of action or defense, and a separate trial might render trial of the other issues unnecessary.[4]

Other Courts in the Eastern District have successfully allocated issues into separate trial and discovery schedules to manage cases involving large numbers of patents.[5]  In this case, Plaintiffs propose dividing up the action into a separate trial on the contract issues, and three separate, staggered trials on the patents.

**B.  Only Limited Discovery for the Contract Claim Trial is Necessary**

Plaintiffs believe that only limited discovery will be required for the trial on the contract claims.  The issues presented by these claims are much simpler than patent issues, and discovery need not be governed by the Patent Rules.  Because the parties have agreed to include as disclosures in this case all documents produced in the pending investigations before the International Trade Commission, most of the relevant documentary discovery is already completed.  Plaintiffs believe that 20 interrogatories, 20 requests for admissions, and 35 hours of depositions will be sufficient to complete discovery for trial on the contract claims.  As detailed in Ericsson's Supplemental Scheduling Conference Report, Plaintiffs believe that a four-day trial is sufficient, and could be conducted as early as August.

---

[2]  *Fed. R. Civ. P*. 42(b); *Saxion v. Titan-C-Mfg.*, 86 F.3d 553, 556 (6th Cir. 1996).

[3]  *Angelo v. Armstrong World Indus.*, 11 F.3d 957, 964-65 (10th Cir. 1993).

[4]  *Jinro Am. Inc. v. Secure Invs.*, 266 F.3d 993, 998 (9th Cir. 2001).

[5]  *See generally*, Notices of Scheduling Conferences, Docket Control Orders, and Discovery Orders, *American Video Graphics, L.P. v. Hewlett Packard Co., et al.,* No. 6:04-CV-397 (E.D.Tex 2005, J. Davis)

## III. INITIAL PATENT DISCOVERY

The parties have asserted approximately sixty patents in the various actions around the world. In this action alone, Ericsson has asserted twenty-seven patents (one of which has been stayed) and Samsung has asserted twenty-two (seven of which have been stayed). In effect, each party is attempting to assert its relevant patent portfolio, but due to the impracticality of asserting hundreds of patents, each party has selected a limited number of representative patents for assertion in this case.

Samsung's proposal calls for discovery to be conducted on only a subset of the patents, and ignores all of the initial disclosure rules for the other patents. This is despite Samsung filing a counterclaim on ten patents under the local patent rules that were written to encourage an early exchange of information to streamline the patent trial process and foster an environment conducive to the early disposition of cases. Samsung's proposal would discourage settlement and would likely slow the resolution of this case by leaving uncertain the status of approximately thirty of the active patents in this case.

In contrast, Plaintiffs propose that discovery related to all active patents in suit proceed under the Patent Rules through infringement/invalidity contentions and initial disclosures. Because the crux of the dispute between the parties is the fair valuation of their respective portfolios, selection of only a few patents in suit for resolution will not address the broader issue. Since the value of a portfolio depends on the breadth of its patent coverage, requiring the parties to prepare claim charts and contentions for all active patents in suit will provide necessary information for valuation of the entire portfolio. The contention and disclosure process will also inform the parties about the strength of the asserted patents, and will decrease the likelihood that the follow-up trial settings will be necessary, as the parties will be unlikely to choose to litigate

their weaker patents first.

As described in the Joint Scheduling Conference Report, Plaintiffs believe that initial discovery should be conducted for each active patent in the current action. In particular, Plaintiffs propose that each party prepare detailed claim charts for every active patent, identifying every asserted claim, and every accused product. Plaintiffs also propose that all of the discovery obligations under local Patent Rule 3 be completed for each active patent, with the accompanying document discovery deadlines being consolidated onto a single date (the normal document production deadline). Plaintiffs propose that each party also complete the invalidity contentions defensive discovery as required by the local patent rules for every active patent. Following completion of the initial discovery requirements, Plaintiffs propose that the parties then select the patents to assert in the first, second, and third patent trial settings.

## IV. PRO RATA PATENT TRIAL DIVISION

Ericsson asserts twenty-six active patents in this case; Samsung asserts fifteen active patents (i.e., patents not stayed as a result of the parties' ITC investigations). In the Joint Scheduling Conference Report, Samsung has proposed that each side select five patents for discovery and trial, with the remaining patents stayed pending the conclusion of that trial. This approach encourages waste, and would likely prolong the action by discouraging settlement.

If followed to its logical conclusion, Samsung's proposal would entail a first trial on five patents from both sides, a second trial on five patents from both sides, and a third trial on five patents from both sides. Following the third proposed trial, there still would be eight remaining

Ericsson patents with no Samsung counterparts.[6]  Although Samsung suggests that the case would likely settle after the first trial, in fact Ericsson would be incentivized to litigate the first three trials in order to get to a trial in which it would have more patents.  Because Samsung's proposal calls for all discovery on the patents not selected for trial to be completely stayed, the dispute has the potential to drag on for many years.

In the Joint Scheduling Conference Report, Plaintiffs proposed that the patents be divided pro rata amongst three trials, approximately nine Ericsson patents and five Samsung patents per trial.  This division, along with a staggered discovery schedule, encourages a rapid resolution of the case.  First, by keeping all of the patents alive, there is little incentive for any party to attempt delay or obstruction.  By separating the trial schedules from each other and having them march concurrently, a delay in one trial schedule would not result in delay of the other two trials.

Second, the timeline afforded by staggering the patents allows for completion of the case (even assuming that all patents must be tried) early in 2009.  Samsung's approach, assuming sequential trials of five patents per party with all other patents stayed in the interim, would not reach final resolution before 2011.

## V.  CONCLUSION

This case is a result of stalled negotiations between Ericsson and Samsung.  Ericsson believes that its proposal for management of this case, as set out in the Joint Scheduling

---

[6] Samsung is likely to argue that its patents stayed because of the International Trade Commission will reenter the lawsuit in due course to resolve this problem.  However, the Federal Circuit in *In re Princo Corporation, et al.,* Docket No.MISC841 (decided Mar. 1,2007), held that patents stayed in a district court due to an International Trade Commision investigation must remain stayed until all appeals are final.  Therefore, considering that the completion date of the Samsung ITC investigation is scheduled for January 2008, and that any appeals would not likely be decided by the Federal Circuit until mid-2009,  the stayed patents are unlikely to become active until very late in this litigation.

Conference Report, Supplemental Scheduling Conference Report, Motion for Separate Trial on Breach of Contract Claims, and this brief, will result in the earliest and least expensive resolution of the current action, and every action worldwide. The combination of the early decision of the fair, reasonable, and non-discriminatory royalty rate, complete initial discovery on all of the active patents in suit, and the pro-rata division of the patents in staggered trial settings will provide information necessary to settlement, incentive to settle, and an efficient means of managing the case if it must be tried.

Dated:  March 16, 2007	Respectfully submitted,

**MCKOOL SMITH, P.C.**

By:	/s/ Sam Baxter
Sam Baxter, Lead Attorney
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
P.O. Box O
Marshall, Texas 75671
Telephone: (903) 927-2111
Fax: (903) 927-2622

Mike McKool, Jr.
Texas State Bar No. 13732100
mmckool@mckoolsmith.com

Douglas A. Cawley
Texas State Bar No. 04035500
dcawley@mckoolsmith.com

Theodore Stevenson, III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com

300 Crescent Court, Suite 1500
Dallas, Texas  75201
Telephone:  (214) 978-4000
Telecopier:  (214) 978-4044

Robert M. Parker
Texas State Bar No. 15498000
rmparker@cox-internet.com
**PARKER & BUNT, P.C.**
100 E. Ferguson Street, Suite 1114
Tyler, Texas 75702
Telephone: (903) 533-9288
Fax: (903) 533-8697

**ATTORNEYS FOR PLAINTIFFS ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, SONY ERICSSON MOBILE COMMUNICATIONS AB, and SONY ERICSSON MOBILE COMMUNICATIONS (USA) INC.**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on March 16, 2007 to all counsel of record via electronic delivery and U.S. Mail.

/s/ Sam Baxter_____