IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, SONY ERICSSON MOBILE COMMUNICATIONS AB, and SONY ERICSSON MOBILE COMMUNICATIONS (USA) INC.,<br><br>                Plaintiffs,<br><br>        v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG TELECOMMUNICATIONS AMERICA LLP,<br><br>                Defendants. | CIVIL ACTION NO. 2:06-CV-63-TJW<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF SAMSUNG'S PROPOSED SCHEDULING ORDER**

Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Telecommunications America LLP (collectively "Samsung") respectfully submit this Memorandum in Support of Samsung's Proposed Scheduling Order pursuant to an order by the Court, issued from bench at the Case Management Conference held on March 8, 2007.

**I.      INTRODUCTION**

This patent infringement litigation involves 49 asserted patents, including 27 Ericsson patents and 22 Samsung patents, as well as various related breach-of-contract and estoppel claims and defenses. Of these 49 patents, eight have been stayed pending resolution of two ITC cases. Nonetheless, the parties (Samsung and Ericsson) agree that conducting a single trial on the remaining 41 patents and related claims would be unmanageable. The parties agree the Court should exercise its inherent authority to group a subset of the patents for a first trial and then conduct additional trials on the remaining patents if necessary.

1

The parties disagree, however, as to (1) when the parties should select the first set of representative patents for the first trial, and (2) how discovery should proceed on the remaining unselected patents.  Samsung proposes that each party select a set of representative patents (such as five patents) for a first trial on all issues related to those representative patents.  The first trial of the representative patents would proceed according to this Court's normal procedures, with a straightforward schedule for discovery, Markman, dispositive motions and pre-trial.  The remaining patents would be stayed until completion of the first trial.  The result of the first trial would most likely obviate any further litigation between the parties, but if necessary, the remaining patents could be divided into two subsequent trials on an expedited schedule, after resolution of the first trial.  This approach would avoid unnecessary litigation that would result from the three overlapping discovery, Markman and trial schedules proposed by Ericsson.

Ericsson has also filed a motion to bifurcate the parties' FRAND defenses, in which Ericsson proposes to have an early FRAND trial ahead of any of the patent trials.  Samsung opposes that proposal, but at the Case Management Conference the Court ordered the parties to limit the current briefing to issues surrounding scheduling of the patent trial(s).  Samsung will address Ericsson's proposal regarding FRAND issues in Samsung's opposition to Ericsson's motion.

## II.     BACKGROUND

### A.     The Parties

This lawsuit centers around the parties' failed attempts to negotiate a patent cross-license relating to GSM and UMTS cellular telephones and base stations following the expiration on December 31, 2005 of a license between the parties.[1]  Samsung and Ericsson make and sell cellular telephones.  Ericsson also sells radio base station equipment commonly used to relay

---

[1] GSM and UMTS refer to communications standards adopted by certain non-governmental organizations.  In order to facilitate inter-operability of products created by different manufactures, many of the communications protocols employed in cellular telephones have been standardized.

signals to and from cellular telephones. Each party alleges that the other party's cellular telephones and/or base station equipment infringes the patents asserted in this litigation.

      **B.**     **The Present Litigation**

Ericsson initiated the present litigation (Case No. 2:06-CV-0063-TJW) on February 20, 2006 ( "Texas I Litigation"). Ericsson initially asserted 15 Ericsson patents against Samsung and requested a declaratory judgment of noninfringement and invalidity on 12 Samsung patents. Samsung counterclaimed against Ericsson on the 12 declaratory judgment patents as well as on ten additional patents. On June 29, 2006, Ericsson filed "counter-counterclaims," asserting yet another 12 patents against Samsung, for a total of 27 patents asserted by Ericsson against Samsung and 22 patents asserted by Samsung against Ericsson.

According to Ericsson's complaint, the "Ericsson Patents cover inventions relating to mobile communication devices and methods." (Compl. ¶ 26.) Broadly speaking, Ericsson's asserted patents include patents that relate to speech coding (involving representing a source of speech in digital format), error-protection coding (involving inserting parity bits to help prevent errors) and communication protocols (including radio links).

Samsung's patents in this litigation likewise relate to mobile communications devices. Broadly speaking, Samsung's patents relate to error-protection coding, power-control, and user-interface functions.

      **C.**     **Other Related Litigation Between the Parties**

In addition to the present case, the parties are involved in a number of additional related litigation proceedings.

**Samsung-Initiated ITC Proceeding**. On June 29, 2006, the ITC initiated an investigation of Ericsson's importation of infringing GSM and UMTS phones and base station equipment under section 337 of the Tariff Act of 1930. This proceeding involves seven Samsung patents (the "Samsung ITC Patents"). The seven Samsung ITC Patents are included among the 22 patents asserted by Samsung as counterclaims in the Texas I litigation. The parties

are approaching the end of discovery, and trial is scheduled to begin on May 29, 2007. The ITC has set a target date of January 7, 2008 for completing the Samsung ITC Proceeding. This Court granted Ericsson's unopposed motion to stay the seven Samsung ITC Patents pending in this action.

**Ericsson-Initiated ITC Proceeding**. On July 31, 2006, Ericsson petitioned the ITC to initiate an investigation of Samsung's importation of GSM and UMTS phones. In this petition, Ericsson accused Samsung of infringing nine U.S. patents ("Ericsson ITC Patents"). All nine Ericsson ITC patents are included among the eleven patents asserted by Ericsson in the Texas II Litigation (described below).[2] These nine patents also include the '027 patent, which Ericsson asserted in the present (Texas I) litigation. Trial in the Ericsson ITC Proceeding is scheduled to begin on July 30, 2007. The ITC has set a target date of April 7, 2008 for completing the Ericsson ITC Proceeding.

**Texas II Litigation**. On July 28, 2006, Ericsson filed a second Texas complaint (Case No. 2:06-CV-0306-TJW), asserting eleven patents against Samsung, including the nine Ericsson ITC Patents. Ericsson asserted one of these eleven patents (the '027 patent) in both this case and the second Texas litigation. With the parties' stipulation, the Court stayed all nine Ericsson ITC Patents in the Texas II litigation.

**European Litigation**. Ericsson filed patent infringement actions against Samsung in three European countries, including matters pending in Germany, the Netherlands and the United Kingdom. Many of the patents asserted by Ericsson in Europe are counterparts to the U.S. patents asserted by Ericsson in the Texas litigation.[3] In each of these countries, Samsung responded with its own countersuits of patent infringement. As with the Texas litigations and the

---

[2] Ericsson recently dropped one of its nine ITC patents from that Investigation.

[3] For example, in Germany, Ericsson asserted European Patent Nos. 0 880 846 and 0 995 267, which are counterparts to United States Patent Nos. 5,864,765 and 6,029,052, respectively. Similarly, in the Netherlands, Ericsson asserted European Patent No 0 699 366, which is a counterpart to U.S. Patent No. 5,758,295, asserted by Ericsson in Texas.

ITC proceedings, the European infringement proceedings are directed to the parties' wireless communication devices.

## III.     THE PARTIES' SCHEDULING PROPOSALS

The parties set forth their respective proposals in the Joint Scheduling Conference Report filed with the Court on March 7, 2007. As explained in the Joint Report, "[i]n light of the large number of patents at issue in this litigation, both parties agree that the patents should be grouped for trial in a sensible manner." The parties agree that a first patent trial shall take place on the June 2, 2008 trial date currently set by the Court. The parties disagree as to when these representative patents should be selected and how discovery should proceed on the unselected patents.

Samsung's Proposal: As indicated above, Samsung proposes that each party choose a set of representative patents (such as five patents) for a first trial on all issues related to those patents on the trial date currently set by the Court, and that the other patents be stayed until completion of the first trial. Samsung proposes that the parties select their representative first round of patents within fourteen (14) days of the Court's Scheduling Order, and that further discovery under the rules trigger from the selection date of those patents. The case can then proceed to trial on a normal schedule, with the parties and the Court focusing on the representative patents and corresponding issues. If necessary, following resolution of the first trial, the remaining patents can be divided into two subsequent trials on an expedited schedule. At the same time, the Court can also certify the results of the first trial as a final appealable judgment. Samsung's proposal would conserve judicial and party resources, simplify the proceedings, and allow the parties to follow the Court's standard docketing schedule.

Ericsson's Proposal: Ericsson proposes selecting patents for the first trial only after completion of the initial discovery obligations for all of the active patents, but prior to the identification of claim terms for construction. After the patents for the first trial are selected, Ericsson proposes to continue with discovery and docket schedules for all three patent trials,

staggering the deadlines for the three sets of patents by approximately four months. For example, under Ericsson's schedule, the parties and the Court would address claim construction for the second trial while handling dispositive motions and pre-trial for the first trial. Ericsson's proposal would waste considerable judicial and party resources, complicate the proceedings with overlapping schedules, and deprive the parties of the opportunity to focus the case on the representative patents and related issues most likely to produce a global resolution of the dispute.

## IV.   ARGUMENT

It is well-settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). As proposed by Samsung, the Court should order the parties to select their representative patents (such as five patents per side) at the outset and stay all other patents until completion of the first trial.

### A.   Samsung's Proposal Conserves Judicial Resources.

Samsung's proposal to select representative patents at the outset and stay the remaining patents would conserve judicial resources at every step in the proceedings. Under Samsung's proposal, to the extent discovery disputes arise, the Court would only need to address issues relating to the selected patents. Similarly, the Court would only need to address claim construction, summary judgment and other motions for those patents. The other approximately 30 patents may well become mooted after the first trial, as a result of the first verdict, developments in the parallel proceedings in the ITC or Europe, or through further settlement negotiations.

### B. Samsung's Proposal Conserves the Parties' Resources.

Ericsson asserts 26 patents against Samsung (excluding the stayed '027 patent), in hopes that just one patent hits its mark.[4] In furtherance of that strategy, under Ericsson's proposal, Samsung would be required to invest the enormous resources necessary to provide invalidity contentions for all 26 patents at the outset, so that Ericsson can choose the five representative patents after seeing Samsung's contentions.[5] That approach encourages parties to file needlessly large numbers of patents in this Court in order to test the strength of each asserted patent. This approach also reverses the traditional duty of plaintiffs to select the patents and claims for a lawsuit before immersing the parties in extensive and expensive contentions on discovery. Ericsson's approach should be rejected in favor of the judicial efficiency and conservation of resources provided by selecting patents and then conducting discovery, in accordance with the well-established rules and practice for patent cases.

### C. Staying the Unselected Patents Is Consistent with Federal Law Authorizing Broad Discretionary Stays Pending Resolution of ITC Proceedings.

The case for staying the unselected patents is even more compelling in light of the parallel ITC (and European) proceedings. As noted in the parties' previous briefing, 35 U.S.C. § 1659(a) provides for an automatic stay for "any claim that involves the same issues involved in the [ITC] proceeding," and the Court has already entered such a stay. But beyond the automatic stay, "[t]he district court may use its discretionary authority to stay any other claims in the action before it." H.R. Rep. No. 103-826(I), at 141 (1994). The legislative history of § 1659(a)

---

[4] Ericsson admitted this strategy in its recent Motion for Separate Trial of the Parties' Breach of Contract Claim: "Given the slim odds of Samsung winning every asserted claim, there is a high likelihood that Samsung will accept a license . . . for the Ericsson patents." Br. at 13.

[5] At the Case Management Conference, Ericsson also proposed that the parties should have a pro-rata share of their non-ITC patents, rather than an equal number, in the first patent trial. Ignoring the fact that Samsung's seven ITC patents could one day rejoin this case (as this Court noted in rejecting Ericsson's motion to sever), Ericsson proposes that it should have nine representative patents in the first patent trial and that Samsung should have only five. Samsung opposes this proposal because it would provide an unfair advantage to Ericsson in the first trial. Ericsson's pro-rata proposal would create bad incentives, allowing a party to assert a large number of patents at the outset, with the knowledge that (a) it could pick its best patents for the first (and most important) trial after learning its opponent's invalidity contentions, and (b) by asserting a large number of patents at the outset, the party would have more patents at the first trial.

instructs that the statute's stay provisions were intended "to address the possibility that infringement proceedings may be brought against imported goods in two forums at the same time." H.R. Rep. 103-826(I), at 141 (1994). "The purpose of § 1659 is to prevent separate proceedings on the same issues occurring at the same time." *In re Princo Corp.*, __ F.3d __, 2007 WL 610732, at *7 (Fed. Cir. Mar. 1, 2007). In this action, Ericsson asserted 26 patents (excluding the ITC patents) involving the same or similar products and technology as those involved in the Ericsson ITC proceeding and in the European proceedings. A stay of the unselected patents would limit overlapping proceedings.

### D.   Samsung's Proposal Simplifies the Issues for Trial and Keeps the Parties on Track for Trial Under the Court's Normal Procedures.

Under Ericsson's approach of conducting initial discovery simultaneously and then staggering three trials by four months, the Court would be asked to rule on various discovery, claim construction and other issues for the second trial (consisting of roughly 15 patents), long before jury selection has even started in the first. Such an overlap would occur with the second and third tracked patents as well. Further, the parties would conduct pre-trial activity for one trial, brief the claim constructions for the second trial, and take discovery for the third, all during the same time period. Ericsson's proposal causes numerous potential scheduling issues that will create repeated conflicts for resources, experts and the attorneys. This schedule is further complicated since the Texas schedules will overlap with two ITC trials on fifteen patents as well as numerous trials in the UK, Germany and the Netherlands.[6] Samsung's proposal, on the other hand, would simplify the issues and streamline scheduling. Indeed, the case would proceed like any other case before this Court, with a manageable number of patents, following the procedures set forth in the local rules as modified by the Court's standing orders.

---

[6] By comparison, recognizing the inherent problems of overlapping cases, the parties agreed in the Joint Schedule Report to schedule deadlines in this case so as not to coincide with major activities in the ITC proceedings.

## V.   CONCLUSION

The parties agree that the Court should group a subset of the 41 (non-ITC) patents in this action for a trial and then conduct serial trials on the remaining patents, if necessary. Samsung also proposes that the parties select their representative patents at the outset and stay all other patents until completion of the first trial. Samsung's proposal would conserve judicial and party resource, simplify the issues for trial, and keep the parties on track for trial under the Court's normal procedures. For these reasons and for the reasons articulated above, the Court should order each party to select a representative set of patents (e.g., five patents) and stay all remaining patents.

DATED: March 16, 2007

Respectfully submitted,

/s/ Eric M. Albritton

Eric M. Albritton
Texas State Bar No. 00790215
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone: (903) 757-8449
Fax: (903) 758-7397
ema@emafirm.com

*Of Counsel*:
John M. Desmarais (NY Bar No. 2261782)
*jdesmarais@kirkland.com*
Gregory S. Arovas (NY Bar No. 2553782)
garovas@kirkland.com
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Tel.: (212) 446-4800
Fax: (212) 446-4900

Christian Chadd Taylor (IL Bar No. 6226216)
ctaylor@kirkland.com
Perry R. Clark (CA Bar No. 197101)
pclark@kirkland.com
Bao Nguyen (CA Bar No. 198023)
bnguyen@kirkland.com
Kenneth H. Bridges (IL Bar No. 6255664)
kbridges@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104-1501
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Ephraim D. Starr (CA Bar No. 186409)
estarr@kirkland.com
Guy Ruttenberg (CA Bar No. 207937)
gruttenberg@kirkland.com
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, California 90017-5800
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys For Samsung Electronics Co., LTD., Samsung Electronics America, INC., and Samsung Telecommunications America LLP*

## **CERTIFICATE OF SERVICE**

    1.  The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this pleading was served on all counsel who have consented to electronic service.  Local Rule CV-5(a) (3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by electronic mail and/or fax, on this the 16th day of March, 2007.

                                                          Eric M. Albritton